Good afternoon, Your Honor. Nice to see you, Mr. Niemann. You too, Your Honor. Long trip today. It will be later, so hopefully it will make it on the scene. My name is Nate Niemann. I'm here on behalf of Alex Cady, and this case offers an issue of first impression here, and that's whether possession of a stolen firearm can serve as a predicate offense for armed violence. Now, looking at the plain text of the statute, the state has already conceded in their brief on page 14 that they agree with the defendant that simply possessing a firearm unlawfully clearly cannot serve as a predicate felony for an armed violence conviction under the plain language of the statute. So we don't have to debate here whether under the plain language of the statute the underlying predicate felony would not be able to serve as a predicate felony for an armed violence conviction. What the state's legislative intent is such that this Court should depart entirely from the plain text of the statute and read into it an exception that fits this case. And as the Court is well aware, that's not something that the Court is supposed to be doing, is reading into I think that the most important thing about the state's argument is that this would be one thing if this statute had never been amended, and we are confronting for the first time whether the legislator had intentionally omitted this charge or had included it. But after House trial, which I discussed extensively in my brief, the legislator really gutted the armed violence statute. They removed the predicate offenses that the appellate court had already determined couldn't serve as predicate offenses, and then they added this entire residual clause, which was added relatively contemporaneously when the 15, 20, 25 year firearm enhancements were added to some of these offenses that were removed. So when the legislator undertook to amend that statute, they had in mind not only the cases that had found the underlying offenses to be inappropriate, but also the problems that the Supreme Court had confronted in House trial with respect to proportionate penalties problems. And that's exactly what we have here. Because if this Court were to accept the state's argument, then any time somebody had multiple firearms, instead of being charged with multiple counts of felony possession of a firearm, they could be charged with armed violence. Now, the penalties for multiple counts of felony possession of a firearm, which would run concurrently, the court knows that those are much less than an armed violence would carry, an armed violence conviction would carry. Yet the state, in their discretion, would be able to Now, what I find interesting is that in the state's brief on page 18, despite the fact that their entire argument hinges on the legislator should have, or the legislator did, in fact, mean for this type of conduct to be punished by the armed violence statute, they state in their brief, Clearly, when the legislator excluded offenses that made the possession or use of a dangerous weapon from being used as predicate offenses, it simply did not conceive of a situation like that in the present case, where the underlying felony happened to involve possessing a stolen firearm for a sales transaction. So I find it interesting that the state is saying that the legislator intended this, but clearly it did not conceive of a situation like the present case. So if the legislator didn't conceive of a situation like the present case, then how could the legislator have intended, when it wrote the statute, to capture the offense conduct in this case? It couldn't, because the legislator had already considered the problem that we're confronting in this case, and that's the fact that if the state's position is accepted by this court, and if the presumably later, the Supreme Court would be presented with the exact same problem that it was presented with in Housetrap. It's a little bit differently because of the way that the statutes were fixed after that, but you still have a situation in which there's considerable variance between punishment for the exact same conduct. And another problem that I have with the state's argument is they're conceding that unlawful possession of a stolen firearm cannot form the predicate for an armed violence conviction, but they're saying that the offense conduct itself should form the basis for the armed violence conviction. In other words, the court is to look at the offense conduct and not the underlying felony to determine whether an armed violence conviction can be sustained here. And the state multiple times points to the facts of this case, how exceptionally dangerous it is to be selling a firearm while armed with a firearm. But if you look again at the plain text of the statute, it requires that the person who violates the statute commits any felony defined by Illinois law. So as I stated in my brief, selling a stolen firearm is actually not a felony defined by law. There's delivering a stolen firearm, which the state mentioned in their brief, a Class 4 felony. But as the state indicated below, their theory of the case and the way that it was charged was the possession of a stolen firearm. And that's the felony that's defined by Illinois law here. And the court isn't required to look at the offense conduct to determine whether a felony defined by Illinois law has been committed. It's just, is it a felony defined by Illinois law? And that's where the analysis stops. You don't have to say, well, is it dangerous? Or go into all these different analyses. The statute itself is actually quite straightforward. It just says a person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois law except, and then the enumerated offenses, and then the residual clause. So he's got to be armed with a dangerous weapon and commit a felony defined by law. That's as simple as it gets. And maybe that's why this particular offense has caused so many problems for the courts in the past. It's because of the absurd results that can result from an actual substantive charge like this as opposed to an enhancement. So I don't think that there's any way that this court could reach the same conclusion as a state without reading exceptions into the statute in at least one place, if not two. So without ignoring the residual clause at the end, and without and with ignoring the felony defined by Illinois law, that is what this court would have to do in order to square with the state's position. And I'm asking this court not to do that. I'm asking this court to look at the plain language of the statute to make this not any more complicated than it needs to be. And with that said, we would ask for the appellate court to reverse and remand. Did you want to make an argument on your other two issues? I could, Your Honor, briefly. With respect to, I also think that the 85-50% sentence issue I think is pretty straightforward. This was a case in which the defendant, everybody was under the impression that it was 85%. That turns out to be wrong, because there was no great bodily harm. As I indicated in my brief, that this issue can be reviewed for second-pronged plain error, and this court is within its power under the Supreme Court rules to reduce that percentage from 85-50. So that's what we'd ask the court to do in the alternative. Thank you. Any questions? Thank you. Mr. Atwood. Good afternoon. Good afternoon, Your Honors. Counsel, may it please the Court. One thing that counsel said that I agree with is that this is a fairly straightforward issue. What this is really going to hinge on, counsel talks about the legislative amendments that occurred after the House Child case, how they added in this residual clause and excluded specifically some other offenses. One thing I would note about the history of this statute is that it's been in its current form now in prior versions. The statute started out regarding all felonies as armed violence if you carried a weapon. Then the legislature added specifically enumerated offenses. Then it removed those offenses and then subsequently added them again over the course of half of a century or so. We didn't really discuss that issue in our briefs, but I stumbled upon it actually this afternoon when I was reviewing some of the cases that were interpreting the armed violence statute. But I think what's important here, when the legislature made those House Child changes, they weren't messing with the intent of the statute. The intent of the statute had already been drafted. That intent's always been the same, and so you can engage in a plain reading of the intent because it's clear what the intent of the statute is. What happened after House Child is the legislature, in a rather clumsy fashion, attempted to create a catch-all because it was trying to avoid double enhancement type situations like what we saw in House Child, like what we saw in the Cherry case. But if you look at the language here and the intent, we look at the plain reading and the plain reading creates an absurd result. It creates an absurd result because the intent tells us this armed violence charge is created because we want to deter individuals from using firearms in the commissions of felonies. So what was the behavior that we saw in this case? The defendant prearranges to make a sale of a firearm, which was later determined to be stolen, with a person he doesn't actually know as a police officer. Sometime between that point and the prearranged meeting, the defendant elects to arm himself with a pistol in order to facilitate the sale of that firearm. They arrive at the prearranged meeting place and his co-defendant, who's also armed, does precisely what this statute is meant to prevent, which is flash a gun and then gunshots ensue. It's a crystal clear, perfect fit for the intent of the statute. And so the real issue for this Court is not to consider what these other cases had happened in them because those cases didn't involve more than one firearm. They involved more than one type of act, which is armed robbery, but armed robbery with a gun. Well, it's the same thing as far as House Child is concerned. What we have here is the elements don't match the intent, so this Court has to do what is authorized to do by law. We talked about people v. Hanna. I cited Judge Posner specifically. You look at those elements and look at that statute, and it doesn't make sense. You're allowed to read into it what was the purpose. The purpose becomes the primary tool when you consider what the act was. I'm having a little trouble with that because to commit a crime, you have to have a crime, a defined crime. You don't read into, like, oh, we're going to read these other things in because the legislature tended to handle this kind of behavior, so we'll read all these other words into a criminal statute. You normally don't do that. You might have a question of whether or not in the written language of the statute it covers, you know, in the written language of certain things. You're seeming to go beyond that, and you're asking to find a crime where there's not a crime stated but you think the legislature intended to cover this other area even though it's not mentioned. Well, I think I understand what you're saying, and I would say there is a crime. It's not mentioned. Well, the crime is the unlawful possession of the firearm, but it's because if you read the statute, it creates an absurd result because you can simply possess a firearm and do nothing more, and you've not done anything that has to do with armed violence. But here, you possess the firearm with a secondary purpose. You were going to use one firearm to facilitate the sale of another. I think it does create – it's an absurd situation. It's just like the Fourth District case. Is it stated explicitly in the language of this law? That you cannot use the – Is it stated explicitly? It says that a felony that has a possession or element of the offense of possession included. But I think they're thinking about simple unlawful possession of a weapon by a felon, things of that nature. And even still, in 2018, People v. Brown, Illinois Supreme Court, found that unlawful possession of a weapon by a felon could constitute a predicate felony for armed violence because it didn't have the exact same elements. It was a slightly different analysis because they were talking about a one-act, one-crime principle. But because you also had to prove that he was a felon, it did change the analysis slightly. It's not like we're asking the court to make a leap that's unheard of because it can exclude something, but it can also include it if the context is right. So like if the legislature were to correct this, what would they say? I think because of the unique facts of this case, they'd have to carve out a specific situation. If you intend to sell a firearm unlawfully, then you have also committed armed violence. It's a unique situation. They would have to say that, right? And that's what makes it – that's what evinces the fact that they didn't consider something like this because it's such a bizarre situation. I couldn't find any case law at all that comes anywhere close to this. And if they didn't consider it, how is it a crime? Because he is unlawfully possessing this weapon, and he's engaged in an act that is inherently dangerous, and the statute is dealing with this intent. He is committing a felony because he's possessing it unlawfully. He's also committing a felony in that he's carrying a gun to facilitate this sale. In the brief, I mentioned a similar provision of the criminal code, which deals with the unlawful delivery of a firearm. That would qualify under this case because it doesn't specifically enumerate use or possession as part of the crime, but it's a Class IV felon. If they charged him with that, it holds up. They just charged him with a different provision of the code. And so the issue here is, like, do you get by the charging? They didn't charge him with the other thing, which was a crime. They charged him with something that wasn't a crime. Well, it is a crime. The unlawful possession is still a crime. It's just the way it's played out in this circumstance, it's created sort of an awkward interpretation, which is why we're here today to make that determination. I just think it's clear that the intent of the statute is owed weight. It's not simply a plain reading of what these elements are because it's clear that they're in conflict, and that's what we have to resolve here. Do you want to give more weight to the intent, which is to prevent exactly what happened in this case, where shots were fired, when the sale was made? One of the things they looked at is if there's a crime, is where people theoretically would be put on notice that A, B, and C is a crime in Illinois. How would they know this is a crime under you? You know, when you're looking at it, well, the legislature intended this, they intended that. I mean, it doesn't fit the normal kind of scenario. Well, the legislature is not omniscient. They don't know every scenario that's going to occur. Well, if they're going to commit a crime, I mean, if they're going to make something a crime to be committed, then they'll have to say it's a crime to be committed. And, you know, those kinds of things have been remedied many, many times in the past. Something happens, society doesn't like what happened, and they make that a crime. Right. I mean, I think that's what happened in Housechild, but it's, you know, they're not perfect. You know, and Housechild's a good example. Right. Something happens, it doesn't fit any of the crimes that are on the books, so what happens to the legislature the next session? They add to the criminal code. There are things added to the criminal code almost every session, if not every session, of the legislature. Right. This one wasn't. You're trying to have us interpret something into the language that's not there. I don't think they were asking you to interpret something that's not there because there's two separate sections. There's intent and then there's elements. And so the legislature's clear, like, we created this whole list, this whole code, dealing with this crime of armed violence because we want to stop this behavior. And so when they're doing that, they just were imprecise in how they tried to stop the behavior that they were so worried about. Look in the statute. It talks distinctly about how much more dangerous it is when people use crimes to commit felonies. And so in essence here, if we don't look at that intent and give it the weight that it's owed, we create a situation where this defendant gets to commit the conduct that the legislature wanted to prevent without actually dealing with the appropriate consequence. And that's what gets to the crux of this matter. And I think it's interesting in the Fourth District, in that Griswold case, they talk about how many absurd different results could occur with the way the armed violence statute is currently written. One of the most ridiculous ones is that an officer could commit perjury on the stand while armed. That's a Class IV felony. That's armed violence. He's committed armed violence under the plain language of the statute. How much weight can you give the elements portion of that statute when such absurd things can occur? You have to default to what the legislature intended, which was to stop people from using guns to commit crimes. There's no question that's precisely what happened here. And we ended up with the exact result that the legislature was trying to prevent, gunshots. An innocent person could have been killed because this defendant chose to show up to this illegal and unlawful transaction with a firearm. He didn't do the shooting. It's not that hard for them to change the language to cover what you're talking about, is it? It's not. But the reason that the legislature – Should they? Should there be a recommendation to change the language in the statute to cover what you're talking about? I think you can get into where you get into so much minutiae that it's hard to classify because this is such an unusual situation. It would be an odd thing for the legislature to just write it in. They certainly could and it wouldn't hurt anything, but the issue that we have to look at here – This case is a lot easier with the way they've written it. Well, right, but that's why we're here, too. That's why we have these checks and balances systems, so that when these odd situations percolate, because they always do, we have some mechanism to deal with them. And that's why the case law exists for this court to consider things other than the plain language of the statute. What's the check and balance here? The legislature versus the judiciary and the judiciary interpreting the legislature, just that situation. So we're here to interpret what they write. Are you checking or balancing it in your case? I think in our case we're trying to balance their intent versus what they wrote. So it would be a balance on we're satisfying what the legislature's goal was, which is to stop this type of crime. It just doesn't fit quite as neatly into the situation, but I think we can all agree these facts fit the intent perfectly. They could almost not be drawn better unless somebody had actually gotten hurt in the end. But that's what we're looking at here. Will you give more weight to the elements or will you give more weight to the intent? And we know these elements have been messed with for years and years because it's such a hard thing to define. I think the legislature thought, and there is no debates on this in the legislature. This was part of a huge criminal act bill. Neither House or the Senate did any real debate on it. It passed basically unanimously. So there was no discussion of this minutia. Somebody just in the legislative drafting office thought, well, we'll put this residual clause in and it will be a catchall. And they didn't think about silly things like this that sometimes do happen. But that's why you can look outside that plain language and capture what the intent was. And when the plain language makes no sense, you have to look at what the intent of the statute was. That's what the Hanna Court says. And it's clear the plain language makes no sense here. So when you look at the intent, you must give that weight to the legislature. We don't have a situation like the Hanna Court have, though, do we? No, it's not precise. And that's why it's a general situation. You can look at each different statute's basic intent. They're all dealing with different situations. And so that's why you have to use your experience and use the existing intent as it is and give that proper weight. The legislature knew what their intent was when they made the change, right? Well, the intent was already present. But as I said, they could know their intent but not be aware of every situation which can occur. As I think it was Griswold talked about, there's a million ways that this conduct can occur, and the legislature didn't really give it enough consideration. But how would we know that they didn't recognize that there might be some things that would slip under the radar and they decided that it was better to correct the big situation than maybe ignore the couple of things, couple of situations where it would. I'm not sure that the legislature would knowingly leave gaps. I think they thought this covers nearly every situation we can conceive of. If we just say, okay, anything with possession of a weapon as an element, just don't include it. Who would have thought that somebody would carry a gun to sell a gun? It just doesn't come up very often. And so they just simply missed it. But that's why we're here. They could have disturbed it and not intended to make that mistake. Because this conduct falls so squarely within their intent. So they must have missed it because it's a clear violation of the intent of the statute. And it's certainly not unprecedented that this court would look at something like intent or public policy and give that consideration to fill in this gap with the legislature. Usually when you're looking at intent, you're not filling in gaps. You're interpreting the language that's there. Right. But the intent language is there. It's codified. It's given more weight because the legislature has not left us guessing what the intent is. They've placed it in the first provision of the statute. It talks about intent and the need to deter. I believe there's six subsections or something like that on it. So it's clear what they wanted to do. They just simply didn't execute it properly when they created that residual clause. It just was too far. One of the other things, I guess, that we would say is, well, do Your Honors have any questions on the other two issues as far as our participation in that? I think one thing I do want to address briefly was with regard to the third issue. I realize this Court has the authority under 615B to alter the sentence here. But I think the fact that this was a fully negotiated plea agreement makes it such that you're sort of taking away the State's attorney's ability to handle its case if you do that. There's no harm in remanding this back. Contract principles apply. And as counsel noticed, nobody knew what the proper percentage was to serve this sentence. Everybody thought it was 85%. We conceded in the brief there was no grave bodily harm finding, so it's a 50% situation. However, given that that changes the calculus, I think it would be best if you just remand it to the State's attorney to determine whether or not, depending on what happens, whether or not it would be appropriate to renegotiate that or if it factors into the amount of time they'd be willing to offer for a guilty plea. And with that, Your Honors, I would ask that you affirm the trial court's denial. Thank you. Thank you. Mr. Newman. Thank you, Your Honor. Justice Carter, I think that your last question I was actually going to use as my rebuttal, which is that normally when the court engages in statutory interpretation, it's trying to interpret a term or trying to determine how certain clauses interact with each other in the same statute. But it's not when a party asks the court to engage in statutory interpretation because of some ambiguity, they're not asking the court to completely gut the statute and chop it up and throw away some parts and change some parts until it's something that doesn't look anything like the legislator originally intended. And that's essentially what the State is asking the court to do here. The State has focused on two themes, I think, that I kept hearing over and over. Number one is the unique set of circumstances in this case. And the other is the absurd result that is created. So number one, I don't think that the State said, who would have thought that carrying a gun to sell a gun would happen? That doesn't seem that unusual to me. I think that in larger metro areas when you're trafficking guns somewhere or you're going to sell guns out on the street, you're not going unarmed. You're selling guns to dangerous people. That's who buys guns. You're not unarmed. So, you know... If the seller is fully armed. I'm sorry? If the seller of the firearm is armed himself or herself. I'm saying that that's probably, I mean, that's reasonable. It's not that unique that somebody would go to a firearm sale, a private firearm sale, a legal firearm sale, and be armed themselves. So I don't think that this case is that unique. With that said, why is this the first time that this has ever come up? And I think that it's because the plain language of the statute, if you read it, all of those State's attorneys that are looking at similar fact patterns like this and determining whether they're going to charge armed violence, felony possession of firearm, whatever, they look at the plain language of the statute and say, well, clearly it says right here that it's exempted. And so it never gets charged. And so nobody ever gets convicted of it. So nobody ever challenges our appeal. So I think that that's how plain the language of the statute is. And to read into it anything else is not appropriate. Now, the second thing is the absurd result. I don't see how reaching a contrary position as a State would lead to an absurd result. In fact, I think that this is the absurd result, where anybody that has more than one firearm could be charged with either felony possession of a firearm, multiple counts, or armed violence. And that's all depending on the discretion of the State and what they want to charge. To me, that's an absurd result. What's the legal definition for absurd result? How is that defined anywhere? I did not see that specifically defined. That wasn't something that I looked at. But I would assume that you could give that its plain and ordinary meaning. I mean, it would, I guess, create a result that would be, you know, repugnant to common sense and fairness. And I think that that's essentially what we have here. Counsel, that's one minute. Just because somebody can't be charged with a Class X felony and sent to prison for 30 years doesn't mean that they can't be charged with a felony and sent to prison for a significant amount of time anyway. Even if they're charged, you know, with a Class II, if they're extendable, like I believe my client was, then they can still be sent to prison for a significant period of time. But this has the opportunity, if the court sided with the State, to ensnare other defendants who may have multiple firearms in their possession and potentially ensnare them in a charge that's really intended for the absolutely most dangerous conduct. So, with that said, I thank everyone today. And I would ask you to reverse. Mr. Neiman, I read the wrong file. One of my friends asked when I ran up here. And I'm trying to rely on my memory. Was this the case where you stepped in after the guilty plea? I did. So, was it on a motion to withdraw? It was on a motion to withdraw guilty. And you presented this issue to the judge. I did. Who was your judge? Judge Chapris. So, he had a chance to correct it right then and there. He had a chance to correct the charge. If there is a misinterpretation of the statute, you brought it to the judge right away. I did, while it was still in the trial court. I did not bring to the court's attention the issue with the 85-50%. That was something that I, candidly, something I noticed while I was doing the brief. But we fully litigated that other issue. Were you asked to withdraw the guilty plea like within a day or two? Or am I mistaken? It was a short period of time, I think. I don't recall from my memory how long. Well, thank you for helping me recall. Okay. Thank you. Thank you. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will stand in brief recess for a panel change.